SULLIVAN v. STUCKY et al.

(Circuit Court, D. Indiana. April 8, 1898.)

No. 9,485.

BUILDING AND LOAN ASSOCIATIONS—RIGHTS OF BORROWING SHAREHOLDER.

Where a building and loan association becomes insolvent, and a receiver is appointed to wind up its affairs, a borrowing shareholder is chargeable with the amount of money actually received by him, with interest from the time it was received, and is entitled to credit for all interest paid, and for so much of the premium as was unearned at the time the society passed into the possession of the receiver.

Lorin C. Collins, Jr., Wm. Meade Fletcher, and Floyd A. Woods, for complainant.

George E. Ross, for defendants.

BAKER, District Judge. This is a suit for the foreclosure of a mortgage executed August 30, 1890, by Jesse M. Stucky and Virginia A., his wife, to the American Building, Loan & Investment Society, a corporation created and existing under and by virtue of the laws of the state of Illinois. The corporation became insolvent, and the plaintiff on February 8, 1894, was appointed by the circuit court of the United States for the Northern district of Illinois the receiver thereof; and by the decree of that court he was duly authorized and empowered to sue upon any and all claims and demands due or to become due to the society, to institute and prosecute foreclosure proceedings upon all mortgages and trust deeds held by it, and to wind up its affairs, and make distribution of its assets among those entitled to participate therein. On May 25, 1894, the plaintiff, on ancillary proceedings, was duly appointed receiver of the society by this court, with like powers. The charter and by-laws of the society provided that every person desiring to become a shareholder therein should pay a membership fee of $1 per share for each and every share taken by him. The shares were $100 each. It was provided that the society might loan to its shareholders all money paid into, and belonging to, its loan fund, and that the loan should be made upon satisfactory notes secured by mortgage on real estate. For every $100 of loan made to a shareholder,

he should, in addition to such note and mortgage, transfer to the society, as collateral security, one share of stock; and such shareholder should pay interest at the rate of 10 per cent. per annum upon all loans, and all interest and dues on stock should be paid on the last Saturday of each month during the continuance of the loan. Any shareholder who should make a loan by giving taxable property as security was required to pay all taxes and assessments thereon as they became due. It was further provided that all shareholders should pay a monthly installment of 75 cents on each share of stock held by him, until the same should be fully paid out, which installments were to be paid on the last Saturday of each month, without notice. On April 5, 1890, Stucky and wife purchased 15 shares of stock, and received a certificate for the same in the society. Subsequently thereto, Stucky and wife, having complied with the provisions of the charter and by-laws, made application for a loan-of $1,500, and bid and agreed to pay therefor a premium of 10 per cent., and also agreed to pay interest on that sum at the rate of 5 per cent., and a premium of 5 per cent. per annum; said interest and premium being equal to interest at 10 per cent. per annum, as provided for in the by-laws of the society. On August 1, 1890, Stucky and wife, being indebted to the society in the sum of $1,852.50 for the principal, premium, and interest of the loan so made, executed 74 promissory notes for the sum of $23.75 each, and four promissory notes for the sum of $12.50 each, dated August 1, 1890. To secure the payment of these promissory notes, they executed the mortgage in suit; and at the same time they transferred to the society, as further security for the loan, the 15 shares of stock held by them. Since the making of the loan, Stucky and wife have paid to the society the sum of $1,018.75. They had made four payments, of $11.25 each, as dues on the stock, before the making of the loan. Of said sum of $1,018.75, $506.25 was paid for dues on the stock, and the remainder of said sum, amounting to $512.50, was paid on account of interest and premium on said loan. Since January 1, 1894, Stucky and wife have paid the complainant the further sum of $833.75. The total amount paid by Stucky and wife on account of the loan and dues on the stock is $1,897.50.

The defendants have demurred to the complaint, and insist that, on the complainant's own showing, the debt secured by the mortgage has been fully paid and satisfied. Their contention is that the sum of $506.25, paid as dues on the stock before the society was placed in the hands of the receiver, should be credited as a payment on the loan secured by the mortgage in suit, and that this sum, added to the other payments, which are admitted, is enough to satisfy and discharge the mortgage. All the authorities agree that on the premature abandonment of the enterprise, whether by voluntary dissolution, or by winding it up by judicial proceedings, the original contract between the society and the borrowing shareholders cannot be carried out, and that neither party is bound to its literal fulfillment.

Three views have been advanced in regard to the relative rights and obligations of the borrowing and the nonborrowing sharehold-

ers. The first view is that the relation between the society and the borrowing shareholder has been changed by the circumstances to one subsisting between an ordinary creditor and debtor, and that the borrowing shareholder is to be charged with the amount actually received by him, with interest at the legal rate, and credited with all payments made, whether by way of dues, interest, or premium, according to the rule governing partial payments. Cook v. Kent, 105 Mass. 246; Association v. Zucker, 48 Md. 448; Association v. Buck, 64 Md. 338, 1 Atl. 561; Association v. Goodrich, 48 Ga. 445; Brownlie v. Russell, 8 App. Cas. 235. This view throws all the loss on the nonborrowing shareholder, and for that reason it is unjust and inequitable. Both classes of shareholders ought equally and impartially to bear the burdens arising from the unexpected misfortunes of the enterprise. This can only be accomplished by requiring the borrowing shareholder to return the amount of the loan received by him, with interest, and then receive his pro rata share of the dividend paid upon the stock, equally with the nonborrowing shareholder. The second view is that the borrowing shareholder is entitled to credit upon his loan for the amount of interest and premium paid by him, but is not entitled to have the amount of the dues paid by him on account of stock applied upon his loan. Towle v. Society, 61 Fed. 446; Strohen v. Association, 115 Pa. St. 273, 8 Atl. 843; Rogers v. Hargo, 92 Tenn. 35, 20 S. W. 430; Brown v. Archer, 62 Mo. App. 277; Knutson v. Association, 69 N. W. 889; People v. Lowe, 117 N. Y. 175, 22 N. E. 1016; End. Bldg. Ass'ns, §§ 528, 531. The third view differs from the last one, in that, instead of crediting the borrowing shareholder with the whole premium, it credits him with only the part estimated as unearned. Towle v. Society, 61 Fed. 446. The court is of opinion that the defendants are chargeable with the amount of money actually received by them, with legal interest thereon from the time it was received, and are entitled to credit for all interest paid, and are to be charged with so much of the premium as was earned at the time the society passed into the possession of the receiver, estimating the life of the society at eight years. These views require that the demurrer should be overruled. So ordered.