MARION TRUST COMPANY, RECEIVER, *v.* TRUSTEES OF EDWARDS LODGE, I. O. O. F.

[No. 19,020. Filed June 30, 1899.]

BUILDING AND LOAN ASSOCIATIONS.—*Insolvency.*—Where a building and loan association becomes insolvent, and is placed in the hands of a receiver, the contracts between the association and borrowing members are abrogated, and the loans become due and payable at once in a lump sum. *p. 97.*

SAME. — *Insolvency. — Borrowing Members.—Payment of Loan.— Credits.*—A borrowing member of an insolvent building and loan association must pay to the receiver the amount loaned to him, with interest at the rate fixed by law in the absence of contract, and he is entitled to a credit thereon for the interest and premium payments made, reckoned by the rule for partial payments, leaving the stock payments subject to losses and expenses. *pp. 97-100.*

From the Marion Circuit Court. *Affirmed.*

*C. N. Carson, J. F. Thompson, J. W. Noel* and *F. J. Lahr,* for appellant.

*Miller & Hanna,* for appellee.

BAKER, J.—May 20, 1899, appellant was appointed receiver of an insolvent building and loan association organized under the laws of this State. May 3, 1896, appellee owned stock and took out a loan secured by a mortgage on real estate and by an assignment of the stock. May 27, 1899, appellee, having paid the association all instalments of dues, interest and premium as they matured, tendered appellant the

amount of the loan, with interest at six per cent. per annum to May 20, 1899, less the amount paid in monthly instalments for interest and premium, and interest on the difference since May 20, 1899. Appellant refused to allow credit for the instalments of premium paid. From a judgment holding the tender sufficient this appeal resulted. Was appellee entitled to credit for the premiums, is the question.

The contract between the parties was that appellee should pay stated sums monthly (1) for dues upon stock, (2) for interest on the loan, and (3) for premium for the loan, and that the association, in consideration of these payments, should never call upon appellant to repay the loan in lump, but that the mortgage should be released when the payments on stock together with appellee's proportionate share of the association's profits from interest, premiums and fines should make the real value of the stock equal its face value. The insolvency of the association incapacitated it from performing its part of the contract. It is not the function of the receiver to continue the business, but to wind up the affairs of the defunct institution. The incapacity of the association to perform its part relieved appellee of obligation to continue the stipulated monthly payments under the contract. Whatever appellee has to pay to appellant must be paid at once and in a lump sum. The amount is to be determined, not from the abrogated contract, but from the equitable principle of adjusting the losses with equality among the stockholders.

All authorities agree that the borrowing member must pay the receiver the amount loaned to him, with interest at the rate fixed by law in the absence of contract, less certain deductions. The disagreement among courts is in regard to the deductions to be allowed. All allow the borrowing member credit for his monthly payments of interest on the loan. Some credit all payments, whether for dues upon stock, or for interest, or for premium. *Brownlie* v. *Russel*, L. R. 8 App. 235; *City Loan, etc., Assn.* v. *Goodrich*, 48 Ga. 445;

*Windsor* v. *Bandel,* 40 Md. 172; *Waverly, etc., Assn.* v. *Buck,* 64 Md. 338, 1 Atl. 561; *Cook* v. *Kent,* 105 Mass. 246; *Rochester Savings Bank* v. *Whitmore,* 49 N. Y. Supp. 862. Others credit nothing but interest payments, and leave the borrowing member's payments on stock and on premium to be adjusted and repaid, subject to losses and expenses, at the final settlement of the trust. *Towle* v. *American, etc., Assn.,* 61 Fed. 446; *Sullivan* v. *Stucky,* 86 Fed. 491; *Choisser* v. *Young,* 69 Ill. App. 252; *Sullivan* v. *Spaniol,* 78 Ill. App. 125. Others credit the interest and also the premium payments, and leave nothing but the stock payments to be subjected to losses and expenses. *Curtis* v. *Granite State, etc., Assn.,* 69 Conn. 6, 36 Atl. 1023; *Rogers* v. *Raines,* (Ky.) 38 S. W. 483; *Reddick* v. *United States, etc., Assn.,* (Ky.) 49 S. W. 1075; *Knutson* v. *Northwestern, etc., Assn.,* 67 Minn. 201, 69 N. W. 889; *Weir* v. *Granite State, etc., Assn.,* (N. J. Eq.) 38 Atl. 643; *Moran* v. *Gray,* (N. J. Er. & App.) 38 Atl. 668; *Strohen* v. *Franklin, etc., Assn.,* 115 Pa. St. 273, 8 Atl. 843; *State, etc., Assn.* v. *Carroll,* 4 Pa. Dist. R. 6; *Rogers* v. *Hargo,* 92 Tenn. 35, 20 S. W. 430; *Leahy* v. *National, etc., Assn.,* 100 Wis. 555, 76 N. W. 625; Endlich Bldg. Assns. (2nd ed.), §531; Thompson Bldg. Assns. p. 396; 4 Am. & Eng. Ency. of Law (2nd ed.), p. 1081; 48 Central L. J. 396.

The first method is inequitable because it puts too great a share of the losses and expenses upon non-borrowing members. Equality does not subsist in allowing the borrowing members 100 per cent. on their stock payments and the others 50 or less.

The second method is inequitable because it puts too great a share of the losses and expenses upon borrowing members. It is the ownership of stock, and nothing else, that makes borrowers and non-borrowers alike members of the association. It is upon their stock, and nothing else, and therefore in the capacity of stockholders, and not otherwise, that borrowers and non-borrowers alike were expecting and entitled

Marion Trust Co. *v.* Trustees Edwards Lodge, etc.

to receive or be credited with divisions of profits. It is upon their stock, and nothing else, and therefore in their capacity of stockholders, and not otherwise, that borrowers and non-borrowers alike must be charged with losses and expenses.

The non-borrowers pay only stock dues. The borrowers pay stock dues, interest and premium. Manifestly stock dues are the only payments made by members in their capacity of stockholders. Manifestly payments of interest and premium are made by members in their capacity of borrowers. Whether the premium be considered as a bonus or as additional interest, or whether it be paid in a lump sum (retained out of the loan) as a result of competitive bidding at stockholders' meetings or be paid in instalments on the basis of an arbitrary percentage, whether it be paid for precedence in securing the loan or as a uniform charge upon all borrowers,—in any event it is paid by the members in their capacity of borrowers.

As to refuse credit for payments of premium, receivers might as well refuse credit for payments of interest made under the contract. The contract has been abrogated by the association's insolvency; the interest that is charged the borrowers on settlement with the receiver is not the interest agreed upon in the contract,—it is the interest that the law, and equity following the law, exacts for the use of money had and received; and borrowers are credited with the interest payments, not as interest, but as partial payments upon the money had and received.

If premiums were not to be credited as partial payments upon the money had and received, and if they were to remain in the account subject to losses and expenses, a non-borrowing member who had paid in $500 on twenty-five shares of stock and who was entitled only to the same dividends of profits as the borrowing member with twenty-five shares, would stand to lose only $500, while the borrowing member who had paid $500 on stock and $500 on premium would stand to lose $1,000.

The third method is equitable because it adjusts the losses among the members according to their interests as stockholders. Equality requires that losses shall be borne by those who would have shared the profits, and in the same proportions. Judgment affirmed.