NUMBER FOUR FIDELITY BUILDING AND SAVINGS UNION
v. SMITH.

155  679
f170  671
f170  672

[No. 19,346.    Filed Oct. 4, 1900.    Rehearing denied Jan. 11. 1901.]

BUILDING AND LOAN ASSOCIATIONS.—*Liquidation.*—*Payment of Instalments After Association goes into Liquidation.*—*Rights of Borrowing Members.*—Where a building and loan association abandons the objects for which it was organized by going into voluntary liquidation, it thereby releases its borrowing members from their obligations to continue the stipulated monthly payments under the contract, and where a member continued her monthly payments after the association had gone into liquidation she was entitled to have the whole amount of the instalments paid by her after the association went into liquidation, including the sum paid as dues, applied on her debt.

From the Hamilton Circuit Court.    *Affirmed.*

*R. W. McBride* and *C. S. Denny,* for appellant.

*S. M. Unger,* for appellee.

DOWLING, J.—The appellant was a building and loan association organized under the laws of this State. In May, 1899, in pursuance of a resolution of its board of directors, it went into liquidation, agreeably to the provisions of the act of February 22, 1899. Acts 1899, p. 84.

The appellee was a borrowing member, and had regularly paid all instalments of dues, interest, and premium up to and including the instalments due in April, 1899. She also made full payments of interest, premium, and dues in May, June, July, August, and September, 1899, after the association had gone into liquidation, but made them under protest. She claimed that by going into voluntary liquidation, the association had abandoned the objects for which it was organized, that she was thereby discharged from her contract to pay her debt in monthly instalments of interest and premium, and that she had become entitled to discharge the balance due in a single payment. She further asserted that the several sums previously paid by her, on

account of interest and premium, should be treated as partial payments on her debt. She tendered the amount of the loan, with interest at six per cent. per annum to the date of such tender, after making such deductions on account of the premium and interest paid, and demanded the surrender of her note and the cancelation of her mortgage. Her offer being refused, she brought this suit to quiet her title to the premises mortgaged by her to secure the payment of said loan, the amount admitted to be due upon the note and tendered to the appellant being paid into court. There was a special finding of the facts, and the conclusions of law stated by the court were favorable to the appellee. These conclusions are assigned for error, and the only question is whether the rule adopted was the correct one.

This court has held that where a building and loan association becomes insolvent and passes into the hands of a receiver, its incapacity to perform its part of the contract between it and a borrowing member relieves the member from his obligation to continue the stipulated monthly payments under the agreement. Whatever the member has to pay is to be paid at once, and in a single sum. The amount is to be determined, not from the abrogated contract, but from the equitable principle of adjusting the losses with equality among the stockholders. It has also been held that in such cases the borrowing member should be charged with the amount of the loan, and interest thereon at six per cent. per annum, and that he should be credited with the several sums paid on account of interest and premium as partial payments upon the money had and received, leaving nothing but the stock payments to be subjected to losses and expenses. *Marion Trust Co.* v. *Trustees Edwards Lodge, etc.,* 153 Ind. 96; *Security Savings Assn.* v. *Elbert,* 153 Ind. 198; *Huter* v. *Union Trust Co.,* 153 Ind. 204.

It is said in *Marion Trust Co.* v. *Trustees Edwards Lodge, supra,* that "The contract between the parties was that appellee should pay stated sums monthly, (1) for dues

upon stock, (2) for interest on the loan, and (3) for premium for the loan, and that the association, in consideration of these payments, should never call upon appellant to repay the loan in lump, but that the mortgage should be released when the payments on the stock together with appellee's proportionate share of the association's profits from interest, premiums, and fines, should make the real value of the stock equal its face value." Such associations impliedly agree with their members that they will continue in business until the stock issued by them has matured according to the general plan upon which such associations are organized. In estimating the value of the stock as an investment on the one hand, and the probable expense of the loan on the other, the borrowing member has the right to consider and rely upon the probable accumulations and profits to arise from a continuation of the series until his stock has matured according to the terms of the agreement, and the charter of the corporation. The consequences of a winding up of a solvent association by a voluntary liquidation are quite as fatal to the expected advantages of the investment and loan as if the business of the corporation were brought to a standstill by insolvency. A loss of a proportionate share of the prospective profits by the borrowing member is the necessary result of a final suspension of the business of the association. By going into voluntary liquidation, the corporation abandons the objects for which it was organized, and the effect of such abandonment is to release its borrowing members from their obligations to continue the stipulated monthly payments under the contract. *Cook* v. *Kent,* 105 Mass. 246; *Waverly, etc., Assn.* v. *Buck,* 64 Md. 338, 1 Atl. 561; Endlich on Law of B. and Loan Assns. (2nd ed.) §523.

In such cases the obligation to pay dues on the stock ceases altogether. Endlich on Law of B. & Loan Assns. (2nd ed.) §523; *Low Street Bldg. Assn. v. Zucker,* 48 Md. 448.

The appellee, therefore, was entitled to have the whole amount of the instalments paid by her after the corporation went into liquidation, including the sum paid as dues, applied on her debt.

The appellant contends that when a member becomes a borrower, the association performs its contract to him as a member by anticipating the maturity of his stock, and that if the loan is of the full par value of the stock it operates as a complete performance by the association. This, however, is not the view the courts have taken of the scope and legal effect of the agreement between the borrowing member and the corporation. It is said that, "in consideration of these undertakings on his part [the borrower] is entitled to the privileges of a member, the principal of which is the right to share in the final distribution of the fund accumulated by the corporation from the payments made by himself and other members." *Cook* v. *Kent,* 105 Mass. 246.

No question as to the constitutionality of the act of February 22, 1899 (Acts 1899, p. 84), is involved in this case. It is unnecessary to decide whether the effect of voluntary liquidation like that of insolvency is to make the unpaid balance of the loan presently due and payable. The appellee voluntarily offered to pay the whole of her debt at once, and she makes no objection to the winding up and dissolution of the corporation under this statute.

We find no error in the record. Judgment affirmed.